UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL JOHNSON,

    Plaintiff,

  v.                                      Case No. 20-CV-1159-SCD

KILOLO KIJAKAZI,[1]
**Acting Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Carl Johnson seeks social security disability benefits based on several physical and mental impairments. Following a hearing, an administrative law judge determined that Johnson could still work despite having marked limitations in his ability to concentrate, persist, and maintain pace on work tasks—"CPP" in the lexicon of social security law. Johnson sought judicial review of that decision, and the district court remanded the matter to the Commissioner of Social Security, who remanded it to the ALJ to address issues relating to the residual functional capacity assessment—that is, the most Johnson could do despite his impairments. Following a second hearing, the ALJ determined that, prior to turning fifty years old, Johnson could still work with certain physical and mental limitations. But this time the ALJ determined that Johnson had only a moderate limitation in CPP.

Johnson now seeks judicial review of the ALJ's latest decision, arguing that the ALJ failed to comply with the remand order. Alternatively, he argues that the ALJ did not support

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Accordingly, Kijakazi is substituted for Andrew M. Saul as the named defendant in this action pursuant to Fed. R. Civ. P. 25(d).

her modified CPP finding with substantial evidence. Because Johnson has failed to demonstrate that the ALJ committed an error of law in modifying her CPP finding and because the ALJ supported that finding with substantial evidence, I will affirm the denial of disability benefits.

BACKGROUND

Johnson filed this action on July 28, 2020, seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me in August 2020 after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. It is now fully briefed and ready for disposition. *See* ECF Nos. 20, 28, 31.

I.  **Procedural History**

Johnson applied for social security disability benefits in June 2014, ultimately alleging that he became disabled on January 1, 2016, when he was forty-six years old. R. 250–63, 384.[2] His date last insured is December 31, 2024. R. 956. Johnson asserted that he was unable to work due to the following medical conditions: heart problems, high blood pressure, diabetes, post-traumatic stress disorder, congestive heart failure, depression, obesity, and sleep apnea. R. 326. The Wisconsin Disability Determination Bureau denied Johnson's applications initially and upon reconsideration. R. 76–142. Johnson requested and received a hearing before an ALJ, who issued a written decision on March 29, 2018, finding that Johnson was

---

[2] The transcript is filed on the docket at ECF No. 16-2 to ECF No. 16-23.

2

Case 1:20-cv-01159-SCD   Filed 08/31/21   Page 2 of 12   Document 32

not disabled. R. 12–75. Relevant here, the ALJ determined at step three of her analysis that Johnson's mental impairments of PTSD, depression, and anxiety caused marked limitations[3] in CPP. R. 20–21. The Social Security Administration's Appeals Council denied Johnson's request for review, R. 1–8, making the ALJ's decision a final decision of the Commissioner, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Johnson exercised his right to judicial review under § 405(g). R. 1043–44. This court subsequently approved a stipulation to reverse the ALJ's decision and remand the matter to the Commissioner to "offer [Johnson] the opportunity for a new hearing; reevaluate the record; proceed through the sequential evaluation process as needed to reach a decision; if warranted, obtain additional vocation expert testimony; and issue a *de novo* decision." R. 1056. The Appeals Council vacated the Commissioner's decision and remanded the matter to the ALJ to resolve the following issue:

> At steps two and three of the sequential evaluation process, the ALJ determined that claimant had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; marked limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself (ALJ decision, p. 6-7). The ALJ therefore determined that claimant's mental impairments were severe (ALJ decision, p. 4). The ALJ then determined that the claimant had the mental residual functional capacity (RFC) to understand, remember, and carry out simple or detailed, but not complex, instructions; work in a low-stress job defined as occasional work-related decisions and occasional changes in the work setting; work at a consistent pace throughout the workday, but not at a production-rate pace where each task must be completed within a strict time deadline; and have occasional interaction with the public (ALJ decision, p. 7). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. Here, the ALJ stated that the limitations in the RFC finding accommodated claimant's mental conditions and his moderate and marked

---

[3] A "marked" limitation in concentrating, persisting, or maintaining pace means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(d).

> "paragraph B" ratings (ALJ decision, p. 9). However, the ALJ did not explain how the limitations accommodated claimant's mental impairments and related symptoms. The ALJ rejected the opinions of the state agency psychologists, who determined that claimant's mental impairments were non-severe, as well as that of the claimant's mental health provider (ALJ decision, p. 11). On remand, the ALJ should reassess the claimant's residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the findings.

R. 1094–95. The Appeals Council instructed the ALJ to "[g]ive further consideration to [Johnson's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." R. 1095. The Appeals Council also instructed the ALJ to "offer [Johnson] the opportunity for a hearing, take further action needed to complete the administrative record and issue a new decision." *Id.*

The Wisconsin Disability Determination Bureau evaluated Johnson's applications again upon remand. *See* R. 1060–91. Susan Donahoo, PsyD, the state-agency psychologist charged with reviewing the medical evidence of record, opined (among other things) that Johnson had a moderate limitation[4] in CPP. R. 1067–68, 1082–83. Based in part on that finding, the state agency determined that Johnson was not disabled. *See* R. 1060–91.

Following a second hearing, the ALJ issued a partially favorable decision, finding that Johnson was disabled as of April 2, 2019 (the day before his fiftieth birthday), but not before then. R. 948–76. In her written decision, dated May 27, 2020, the ALJ indicated that she had complied with the Appeals Council's remand order, which she quoted at length. R. 953. The ALJ again determined that Johnson had severe mental impairments, but this time found that

---

[4] A claimant has a "moderate" limitation in an area of mental functioning if his "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c).

4

he had a moderate, rather than a marked, limitation in CPP. R. 956–59. The ALJ acknowledged the about-face, noting that "the overall treating records and reports of the claimant for the relevant period of this decision support no more than a moderate degree of limitation in this area." R. 958–59. She provided three bases to support this finding: Johnson's reported activities, Johnson's mental-status examinations, and Johnson's functioning at a recent mental-status consultative examination. *See* R. 959.

With respect to Johnson's mental functioning, the ALJ noted that his activities of daily living—driving, preparing meals, watching television, handling his own medical care, hunting, fishing, working, and managing his funds—"require some degree of concentration, persistence or pace." R. 959 (citing Exhibits B4E, B6E, B15E). The ALJ also noted that Johnson claimed at the hearing that he was able "to work two jobs and do training for the rescue department, lesson plan and do prep work, then do two-hour training sessions twice per month." R. 959 (citing hearing testimony). According to the ALJ, she accommodated Johnson's pace issues in the assigned RFC by finding that he could "maintain concentration, persistence, and pace for two-hour intervals over an eight-hour day with routine breaks" and could "work in a low stress job, defined as one that requires only occasional work-related decisions, involves only occasional changes in the work setting, and does not impose fast-paced production quotas." R. 959. As for Johnson's mental-status exams, the ALJ noted that "he was observed to be engaged and an active participant." *Id.* (citing Exhibits B24F, B31F). Likewise, the ALJ noted that Johnson "answered questions in a generally pleasant business like way" during the consultative exam in January 2020. R. 959 (citing Exhibit B31F).

The ALJ's latest decision became final after Johnson did not file any written exceptions and the Appeals Council did not review the decision on its own. *See* R. 949.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings."

6

*Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Johnson first argues that the ALJ failed to comply with the Appeals Council's remand order when she modified her finding at step three from a marked to a moderate limitation in CPP. Johnson, however, has not cited any authority to support his argument that an ALJ's failure to comply with a remand order constitutes an independent basis for reversal and remand. *See Balde v. Astrue*, No. 10-C-0682, 2011 WL 3419371, 2011 U.S. Dist. LEXIS 86352, at *52 (E.D. Wis. Aug. 4, 2011) ("[A]ssuming, *arguendo*, that the ALJ erred in [not complying with the Appeals Council's remand order], plaintiff provides no authority for the proposition that such an error provides an independent basis for reversal and remand."). Moreover, the

remand order came from the Appeals Council, and the plaintiff did not file any exceptions with the Council.

Assuming, for the sake of argument, that the failure to comply with the Appeals Council's remand order could be an independent source of error, Johnson has failed to demonstrate that the ALJ erred in this case. When a case is remanded to an ALJ by the Appeals Council, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). The remand order here expressly vacated the ALJ's prior decision, thus nullifying her step-three finding. *See Anthony L. v. Berryhill*, No. 17 cv 6608, 2019 WL 1354419, 2019 U.S. Dist. LEXIS 50126, at *21 (N.D. Ill. Mar. 26, 2019) (finding no violation of the Appeals Council's remand order where the order expressly vacated the ALJ's prior decision). After describing the ALJ's prior step-three findings, the order instructed the ALJ to reassess Johnson's mental RFC and to provide appropriate rationale in support of her assessed limitations. It did not, however, prohibit the ALJ from reassessing her step-three findings or require the ALJ to find that Johnson had a marked limitation in CPP. Indeed, the order explained that the ALJ was to issue a new decision. Johnson therefore has not demonstrated that the ALJ's decision on remand to modify her CPP finding was inconsistent with the Appeals Council's remand order.[5]

Johnson also argues that the ALJ did not sufficiently explain why she modified her step-three CPP finding. I disagree. The ALJ acknowledged that she found a marked limitation in CPP in her prior decision but explained that the overall treating records and Johnson's self-

---

[5] The district court remand order, which instructed the ALJ to issue a *de novo* decision, further supports the conclusion that the ALJ on remand was not obligated to adopt her prior step-three findings.

reports during the relevant period did not support more than a moderate degree of limitation in that area of mental functioning. The ALJ noted that Johnson's activities of daily living—driving, preparing meals, watching television, handling his own medical care, hunting, fishing, working and managing his funds—required some degree of concentration, persistence, or pace. The ALJ also cited Johnson's hearing testimony that he could still work two jobs and do training for the rescue department, lesson plan and prep work, and two-hour training sessions twice per month. Although Johnson reportedly performed those duties at a slow pace, the ALJ explained how the RFC assessment accommodated that limitation, including by limiting Johnson to maintaining CPP for only two-hour intervals throughout the workday and to low-stress jobs. Finally, the ALJ noted that Johnson was observed to be engaged and an active participant during his mental-status exams and that he answered questions in a generally pleasant business-like manner during his recent mental-status consultative exam.

Despite this explanation, Johnson maintains that the ALJ's modified CPP finding is not supported by substantial evidence because the only "new" evidence the ALJ cited was the consultative exam, and, according to Johnson, the findings at that exam did not support improvement in CPP. However, the consultative exam was not the only evidence the ALJ cited that did not exist at the time of her prior decision. The ALJ also noted that state-agency psychologist Dr. Donahoo reevaluated the record evidence after the district-court remand and opined that Johnson had a moderate limitation in CPP. Johnson accurately points out that the ALJ did not discuss Dr. Donahoo's opinion at step three, but she didn't need to—the ALJ's decision is read as a whole, and she is not required to repeat her analysis at each step of the process. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (finding that an ALJ's failure to discuss certain evidence at step three did not require remand, as he discussed that

9

evidence later in his decision). Johnson also points out that the ALJ gave only some weight to Dr. Donahoo's opinion and did not assess that opinion in accordance with the new agency guidelines. There's some merit to that argument. Nevertheless, based on the ALJ's step-three finding, it's clear she found persuasive Dr. Donahoo's opinion that Johnson had only a moderate limitation in CPP.

Moreover, Johnson provides no authority to support his argument that the modified CPP finding could be based on new evidence only. Johnson includes in his brief a side-by-side comparison of the evidence cited in the two ALJ decisions. But the Appeals Council vacated the ALJ's prior decision. Thus, the only issue is whether the latest decision is supported by substantial evidence. *See Balde*, 2011 U.S. Dist. LEXIS 86352, at *52–53 ("The only question properly before [the court] is whether the ALJ's decision . . . is supported by substantial evidence." (quoting *Poyck v. Astrue*, 414 Fed. Appx. 859, 861 (7th Cir. 2011)). Johnson's reported activities and abilities and mental-status exams constitute substantial evidence in support of the ALJ's finding that Johnson had a moderate limitation in CPP.[6] That is true even if an alternative position—for example, the ALJ's prior one that he had a marked limitation in CPP—is also supported by substantial evidence. *See Scheck*, 357 F.3d at 699. Ultimately, when the evidence does not point to an inescapable conclusion, an ALJ is entitled to change her mind if she supports that decision with substantial evidence. *Graves v. Astrue*, No. 2:07CV-01258 PHX-GMS, 2008 WL 4174886, at *4 (D. Ariz. Sept. 5, 2008) ("Plaintiff identifies no authority holding that an ALJ (or any adjudicator) may not change his mind on

---

[6] Johnson contends that the consultative exam does not support the modified CPP finding because the ALJ gave little weight to the examiner's opinion. That's true. But the ALJ did not discount the examiner's underlying observations and findings.

10

remand for reconsideration, nor does Plaintiff even attempt to articulate why it would be error for the ALJ to do so.")

Finally, Johnson fails to explain how the ALJ's modified step-three finding materially harmed him. He concedes that he is not presumptively disabled, and he does not articulate how the evidence supports a more restrictive RFC. Johnson claims that the RFC failed to account for any serious limitations in CPP, but he never mentions what serious limitations are supported by the record. Likewise, while Johnson notes that a marked limitation in CPP *could* translate to time off-task, he does not point to any evidence in the record that he had such a limitation, let alone one above the typical fifteen-percent threshold for most jobs. Thus, any error in the ALJ's step-three finding was harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because [the plaintiff] did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.").

## CONCLUSION

For all the foregoing reasons, I find that Johnson has not demonstrated that the ALJ committed reversible error in modifying her step-three CPP finding and that the ALJ's decision is otherwise supported by substantial evidence. Thus, the Commissioner's decision is **AFFIRMED**. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 31st day of August, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge